**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

In re:

Khone Sanasy,

                    Debtor

Chapter 7
Case No. 18-20522

## MEMORANDUM OF DECISION

The trustee seeks to employ the law firm of Bedard & Bobrow, P.C., as special counsel to represent him in a fraudulent transfer action. [Dkt. No. 46.] Bedard & Bobrow is currently the plaintiff in that action, and the debtor is one of the two defendants. *See* [Adv. Proc. No. 18-2016, Dkt. No. 1]. The debtor, a former client of Bedard & Bobrow, objects to the trustee's request, asserting that Attorney Bedard may have a conflict of interest. [Dkt. No. 47.] The trustee's application will be denied.

### FACTS[1]

The debtor commenced this chapter 7 case in September 2018. [Dkt. No. 1.] Her Schedule E/F listed Attorney Bedard as a creditor holding an unsecured claim in the amount of $2,200 for legal services. Id. Her Schedule I disclosed that her only income consists of $1,477 in monthly gifts from her son. Id. The debtor's original schedules and statements did not disclose (i) any interest in a business known as "Gracino, Inc." or "Graciano, Inc."; (2) any debts owed to her by Hatsana Phatavong; or (3) any income from a transaction with Achara Weydt. *See* id.

Later, the debtor submitted amended schedules and statements that disclosed an ownership interest in "Gracino, Inc." from January to March 2018. [Dkt. No. 7.] The debtor

---

[1] The factual recitation that follows is derived from the debtor's schedules and statements and from the claims register in her chapter 7 case; it also draws from the allegations in the complaint filed by Bedard & Bobrow in the related adversary proceeding. This recitation relates only to the trustee's application to employ and is not intended to have any preclusive effect in any other action or proceeding.

also disclosed that she was owed $63,000 by Hatsana Phatavong and that she had settled the debt

for $15,000.  Id.  The debtor asserted that Mr. Phatavong had failed to pay her and instead

applied the $15,000 to a debt that her son owed Mr. Phatavong.  Id.  She included the $15,000

settlement payment in her gross income in the year preceding the petition date and listed a

$15,000 payment to Sourasay Senesombath as a payment to an insider within the year before the

petition date.  Id.[2]

Bedard & Bobrow filed a proof of claim, asserting a secured claim in the amount of

$2,464.67 arising out of a legal bill.  [POC No. 6-1.]  Then, in January 2019, the debtor's

disclosures were again altered by amended schedules and statements.  *See* [Dkt. No. 58].  The

amended Schedule A/B clarified that the debtor managed but did not own "Graciano, Inc." and

reiterated the prior disclosures as to the settlement with Mr. Phatavong.  Id.  That schedule also

disclosed, for the first time, that "Achara Weydt agreed to pay Debtor $40,000 for assets

associated with Graciano, Inc.," but had "paid only $27,500 plus $5,000 directed to be paid to

third parties as a 'finder's fee,'" leaving an obligation to the debtor in the amount of $12,500.  Id.

The amended Statement of Financial Affairs corroborated that the debtor had received $27,500

from Achara Weydt in the two years preceding the petition date.  Id.  It disclosed, for the first

time, that the debtor had, in March 2018, paid an "employee $28,000 previously loaned obo

Graciano, Inc."  Id.  The statement also explained that the debtor had operated "Graciano, Inc."

as a manager for her boyfriend.  Id.[3]

About two months after the petition date, Bedard & Bobrow started an adversary

proceeding against the debtor and Sourasay Senesombath by filing a complaint seeking to avoid

fraudulent transfers under the Maine Uniform Fraudulent Transfer Act.  *See* [Adv. Proc. No. 18-

---

[2]  As required by D. Me. LBR 1009-1(b), this first set of amended schedules and statements clearly identified changes to the original schedules and statements.

[3]  Despite the requirements of D. Me. LBR 1009-1(b), this second round of amended schedules and statements failed to clearly identify changes to the prior schedules and statements.

2016, Dkt. No. 1].  In that complaint, the firm alleged that the debtor had previously retained

Attorney Bedard to represent her with regard to money she was owed by Hatsana Phatavong, and

with regard to issues she was having with Jose Graciano, her partner in a restaurant business

known as Thai Lotus.  Id.  The firm alleged that, despite its efforts, the partnership issues were

not resolved, and that the debtor sold Thai Lotus to Achara Weydt, who paid substantial sums for

the restaurant, but remitted those sums to a third person at the debtor's direction, "likely one of

her children."  Id.  The firm alleged that it reached a settlement with Mr. Phatavong in which he

agreed to remit $15,000 to Attorney Bedard to offset the debtor's legal bills, but that the debtor

had skirted the agreement and caused the funds to be paid to her son, Sourasay Senesombath,

instead.  Id.  Through the complaint, the firm seeks to avoid transfers of the debtor's property

arising from the settlement with Mr. Phatavong and the sale of the restaurant to Achara Weydt.

Id.  The firm also seeks "damages not to exceed double the value of the property transferred or

concealed, plus attorney's fees, interest and costs[.]"  Id.

## ANALYSIS

The trustee's retention application is governed by 11 U.S.C. § 327(e), which states that:

> The trustee, with the court's approval, may employ, for a specified special
> purpose, other than to represent the trustee in conducting the case, an attorney that
> has represented the debtor, if in the best interest of the estate, and if such attorney
> does not represent or hold any interest adverse to the debtor or to the estate with
> respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).  There is no question that Bedard & Bobrow previously represented the

debtor, and the proposed retention would constitute a "special purpose" within the meaning of

section 327(e).  The Court also assumes, without deciding, that the retention would serve the best

interest of the estate, and that the firm does not hold or represent an interest adverse to the estate.

The sole issue is whether Bedard & Bobrow represents or holds an interest adverse to the debtor

with respect to the fraudulent transfer action in which the firm would be employed.

The phrase "interest adverse" – or something like it – appears several times in the Bankruptcy Code.[4]  For example, the phrase appears in 11 U.S.C. § 327(a), which permits the trustee, with court approval, to "employ one or more . . . professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."  11 U.S.C. § 327(a).  Although section 327(a) and section 327(e) share a prohibition on the retained professional holding an adverse interest, the scope of that prohibition varies in two ways.  Special counsel employed under section 327(e) may not hold an interest adverse to either *the estate or the debtor* with respect to the *specific matter* on which counsel is to be employed.  By contrast, counsel employed under section 327(a) to assist with the trustee's general duties is only prohibited from holding an interest adverse to *the estate*, but that prohibition applies *generally*.

Section 327(a) also contains a disinterestedness requirement that section 327(e) does not.  The Code defines a "disinterested person" as a person that:

> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason[.]

---

[4] *See, e.g.,* 11 U.S.C. § 328(c) ("Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."); 11 U.S.C. § 702(a) ("A creditor may vote for a candidate for trustee only if such creditor – (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title; (2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and (3) is not an insider."); 11 U.S.C. § 1103(b) ("An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.  Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.").

11 U.S.C. § 101(14).  From this definition, it "can readily be appreciated that the concepts of

disinterest on the one hand, and materially adverse interest, on the other hand, are somewhat

intertwined."  In re Martin, 817 F.2d 175, 179 (1st Cir. 1987) (footnote omitted).

Even so, the inclusion of the disinterestedness requirement in section 327(a), and its

omission from section 327(e), must be presumed to have been intentional.  To give effect to that

intention, the requirement of disinterestedness and the prohibition on maintaining an adverse

interest must be interpreted in a manner that accords meaning to both.  It follows that a person

cannot be said to hold or represent an interest adverse to the debtor merely because that person is

a creditor (or an equity security holder or insider) of the debtor; otherwise, the requirement of

disinterestedness would swallow up the prohibition on maintaining an adverse interest.  *See* In re

Potter, No. 7-05-14071 MA, 2009 WL 2922850, at *1 (Bankr. D.N.M. June 12, 2009) ("A pre-

petition claim for unpaid professional fees arising from proposed special counsel's pre-petition

representation of the Debtor does not disqualify such counsel from representing the trustee under

11 U.S.C. § 327(e)." (footnote omitted)); In re EBW Laser, Inc., 333 B.R. 351, 359 n.3 (Bankr.

M.D.N.C. 2005) (collecting cases to support the proposition that a claim for pre-petition fees will

not generally disqualify special counsel under section 327(e)).  Indeed, the purpose of section

327(e) is to permit an attorney who represented the debtor in a matter pre-petition to represent

the estate in that same matter post-petition to avoid the expense and delay that might result if the

estate were required to obtain disinterested counsel unfamiliar with the subject matter.  *See* S.

Rep. No. 95-989, at 38-39 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5824-25 (explaining

that section 327(e) would "most likely be used when the debtor is involved in complex litigation,

and changing attorneys in the middle of the case after the bankruptcy case has commenced

would be detrimental to the progress of that other litigation"); H.R. Rep. No. 95-595, at 328

(1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6285 (same).  Such an attorney may very well

have a claim against the debtor's estate for unpaid fees in connection with the pre-petition

representation, and if that claim amounted to an adverse interest few attorneys would qualify for

retention as special counsel under section 327(e).

These distinctions between section 327(a) and section 327(e) illustrate that a professional

employed to assist in the trustee's general duties must maintain a greater degree of impartiality

as to the estate, while an attorney employed for a specified special purpose need only ensure that

his or her interests are not adverse to either the estate or the debtor with respect to that specified

special purpose.  This analysis narrows the field by identifying what an adverse interest is not.

So far, the analysis does not, however, answer the ultimate question:  What is an "interest

adverse" within the meaning of section 327?

In the absence of a statutory definition for this phrase, the Court accords the language its

ordinary meaning.  The term "interest" is defined, in relevant part, as: "The object of any human

desire; esp., advantage or profit of a financial nature."  Black's Law Dictionary 934 (10th ed.

2014).  And the term "adverse" is defined as: "1. Against; opposed (to). 2. Having an opposing

or contrary interest, concern, or position. 3. Contrary (to) or in opposition (to). 4. HOSTILE."

Id. at 64.  An adverse interest, then, is an object of desire, especially a financial desire, that is

hostile, contrary, or opposed to the desires of another person or entity.  An "adverse interest" has

been described as the "'possess[ion] or assert[ion] [of] mutually exclusive claims to the same

economic interest, thus creating either an actual or potential dispute between rival claimants as to

which . . . of them the disputed right or title to the interest in question attaches under valid and

applicable law[.]'"  Rome v. Braunstein, 19 F.3d 54, 58 n.1 (1st Cir. 1994) (quoting In re

Roberts, 46 B.R. 815, 826-27 (Bankr. D. Utah 1985), *aff'd in relevant part and vacated in part*

*on other grounds*, 75 B.R. 402 (D. Utah. 1987)).

Along these same lines, other courts have distilled the adverse interest inquiry into a conflict-of-interest analysis, asking whether special counsel's retention would create a conflict with the debtor or the estate in the matter for which counsel would be engaged.  *See, e.g.,* In re Potter, 2009 WL 2922850, at \*1; In re J.S. II, L.L.C., 371 B.R. 311, 321 (Bankr. N.D. Ill. 2007) ("The 'adverse interest' referenced in section 327(e) refers to either an actual or a reasonably probable conflict of interest."); Buckley v. Transamerica Inv. Corp. (In re Southern Kitchens, Inc.), 216 B.R. 819, 826 (Bankr. D. Minn. 1998) ("General principles governing attorneys' conflicts of interest apply in determining the adversity of the interests of proposed counsel's other clients.").

The First Circuit has commended a conflict-of-interest approach as to section 327, opining that the statute "demands that the court root out impermissible conflicts of interest between attorney and client[.]"  In re Martin, 817 F.2d at 180; *see also* Rome, 19 F.3d at 57 (characterizing section 327(a) as a "particularly rigorous conflict-of-interest restraint[]").  In parsing the meaning of the "twin requirements of disinterestedness and lack of adversity" that "telescope into what amounts to a single hallmark," the First Circuit has noted that section 327 "is intended . . . to address the appearance of impropriety as much as its substance[.]"  In re Martin, 817 F.2d at 180.  Going a step further, that court has cautioned that "doubt as to whether a particular set of facts gives rise to a disqualifying conflict of interest [under section 327(a)] normally should be resolved in favor of disqualification."  Rome, 19 F.3d at 60.

Despite the foregoing statements, the First Circuit has been pragmatic in its application of section 327(a), ruling that the inquiry is fact-intensive, and that the "existence of a potential for conflict of interest does not render the appointment of counsel nugatory, but makes it voidable as the facts may warrant."  In re Martin, 817 F.2d at 182.  For this reason, the First Circuit has declined to adopt a bright-line rule as to the permissibility of debtors' counsel taking security for

the payment of post-petition attorneys' fees.  Id. at 181-83.  It has also suggested that, in "special circumstances," the bankruptcy court should weigh the risk of divided loyalty by counsel against the benefits to be derived from the representation or the impracticability of obtaining new counsel without significant delay and expense.  Rome, 19 F.3d at 59 n.3.

Here, based on the information provided in support of the retention application and the disclosures made by the debtor in her chapter 7 case, it appears that Bedard & Bobrow has an interest adverse to the debtor.  The firm does not have an interest adverse to the debtor or the estate by virtue of its status as a creditor, or due to the proof of claim that it filed in the debtor's case.  But the firm is currently a plaintiff in a fraudulent transfer action against the debtor, and the firm is apparently seeking to recover damages and attorney fees from the debtor in that action.  There is little, if any, doubt that the financial interests of the firm and the debtor are opposed.  This is true even if the firm is ultimately determined to lack standing to assert the claims in the adversary proceeding.  The Court is required to evaluate the trustee's application based on the existing record, including the present configuration of the adversary proceeding.  Even the most cursory review of that configuration compels the conclusion that the firm currently holds and represents an interest adverse to the debtor.

That said, even if that conclusion were not compelled, the Court would decline to approve the trustee's application to employ Bedard and Bobrow for the following reasons.  First, the present configuration of the adversary proceeding gives rise to the concern that adversity may exist between the firm and the debtor because the firm is apparently seeking damages from the debtor's son.  The firm, as a plaintiff, apparently seeks to recover damages from a person who may be in a close familial relationship to the debtor and who may be a source, if not the source, of the debtor's income.  This alignment suggests that the firm's interests may be adverse to the debtor's.  Second, the firm has also sued the debtor, despite the automatic stay, asserting a cause

of action for which the chapter 7 trustee has exclusive standing.  Third, even if the trustee were

permitted to employ the firm as special counsel, the adversary proceeding would not be ready to

proceed.  The trustee would likely need to either start anew or amend the complaint to name

himself as plaintiff and assert claims for relief under Chapter 5 of the Bankruptcy Code.  These

expected reconfigurations undermine any notion that the trustee would gain significant

efficiencies by employing Bedard & Bobrow as special counsel in the pending proceeding.

Finally, the debtor suggests that Bedard & Bobrow possesses a disqualifying conflict in

light of the firm's duties to the debtor as a former client.  In response, the trustee and the firm

point to the Maine Supreme Judicial Court's decision in Samsara Memorial Trust v. Kelly,

Remmel & Zimmerman, 102 A.3d 757 (Me. 2014) for the proposition that it is permissible for a

lawyer to sue a former client for fraudulent transfers.  Although that case may have involved an

attorney naming a former client as a defendant in a fraudulent transfer action, the Law Court

made no observations about the permissibility of that configuration; the issue does not appear to

have been raised or decided.  As such, the decision does not establish that it is permissible for an

attorney to use confidential information obtained in the course of representing a client in a

manner adverse to that client when later representing another.  Here, it seems possible that

Bedard & Bobrow learned of at least some of the facts relevant to the fraudulent transfer action

in the course of the firm's prior representation of the debtor.[5]  In light of the First Circuit's

admonition to resolve doubts in favor of disqualification, this possibility constitutes a fourth

factor weighing against the trustee in the section 327(e) calculus.  Ultimately, these factors

would weigh heavily against the trustee in his quest to employ Bedard & Bobrow, even if the

firm had not established an interest adverse to the debtor by naming her as a defendant in an

action for damages.

---

[5] The Court is not finding that Bedard & Bobrow has violated any ethical rule, and nothing in this decision
should be construed as such a finding.

When that adverse interest and other relevant factors are compared with the purported

benefits of the representation and the hardship to the trustee of finding a different lawyer to

represent him as special counsel, the balance does not favor the trustee.  At this stage, the

fraudulent transfer action is in its infancy, and the claims are relatively straightforward.  The

institutional interest in preserving the integrity of bankruptcy proceedings outweighs any

efficiencies that might be gained if, in this case, the firm were permitted to represent the trustee

as special counsel.

### CONCLUSION

The Court will deny the trustee's application to employ the law firm of Bedard &

Bobrow, P.C., as special counsel in the fraudulent transfer action.  A separate order will issue.

Date: February 14, 2019

Michael A. Fagone
United States Bankruptcy Judge
District of Maine